(No. 62051.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANTHONY YOUNGER, Appellee.

*Opinion filed May 21, 1986.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry, Inge Fryklund and Maureen P. Feerick, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (R.H.R. Silvertrust, Assistant Public Defender, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

In an indictment returned in the circuit court of Cook County, defendant, Anthony Younger, was charged with

the offenses of robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—1(a)) and theft (Ill. Rev. Stat. 1981, ch. 38, par. 16—1(a)). The theft charge was nol-prossed. Following a jury trial, defendant was convicted of robbery and sentenced to three years' incarceration. In a Rule 23 order (87 Ill. 2d R. 23; 132 Ill. App. 3d 1162), the appellate court affirmed the conviction, but finding that "a more suitable sentence would be a number of years' probation coupled with an appropriate period of weekend incarceration," vacated the sentence and remanded for resentencing. We allowed the People's petition for leave to appeal (103 Ill. 2d R. 315(a)).

The victim, Al Logan, testified that at approximately 9 to 9:15 p.m. on March 13, 1983, his wife came to the restaurant where he was working and, when he got off work, they went to a liquor store next to the restaurant to purchase a six-pack of beer and a half-pint of scotch. They then drove to a grocery store located at Jackson and Pulaski streets, where Mrs. Logan intended to buy some articles. As Mrs. Logan crossed the street and approached the store, she slipped on the wet pavement and a group of young men, including defendant, began to laugh and to call her names. Although what occurred immediately following is not entirely clear from Logan's testimony, it appears that when he heard the young men shouting obscenities at his wife, he stepped outside of his car and waited for his wife to return. He testified that defendant went to the passenger side of his car, removed two paper bags from the car, set the bags on the pavement, walked around the car to the driver's side where Logan was standing, and jumped on his back, knocking him to his knees. A struggle ensued, whereupon defendant, now joined by his confederates, dragged Logan into the doorway of a vacant building next door to the grocery store. During the struggle, Mrs. Logan came out of the store, and upon seeing what was happening, re-

turned to the store to summon the security guard, Charles Goldsmith. They heard the assailants shout "Let's kill him." During the struggle, Logan's watch and keys were taken and he suffered lacerations to his hands and legs. Goldsmith, who knew defendant, ordered the keys and watch returned, but the assailants refused to comply and fled the scene. Goldsmith led the Logans into the store, where a store employee called the police and, while they were waiting for the police to arrive, Logan saw his car being driven away from where he had left it. The "stripped" car was recovered a few weeks later by the Chicago police, and Logan was required to pay $150 for towing and storage.

The appellate court held that the imposition of the three-year sentence of imprisonment was an abuse of discretion. It cited the testimony that the incident occurred a few doors from and within sight of defendant's residence; the security guard from the liquor store knew defendant; no weapons were involved; there was no injury to the victim other than a skinned hand; defendant was not the one who stole the victim's car; and defendant was a 17-year-old, unarmed, nonviolent, first offender who was only a few credit hours from a high school diploma and whose employer told the circuit court that he would continue to employ him. It described the occurrence as a "neighborhood teenage prank."

Citing *People v. Perruquet* (1977), 68 Ill. 2d 149, and *People v. La Pointe* (1981), 88 Ill. 2d 482, the People argue that the appellate court improperly substituted its judgment as to the proper sentence for that of the circuit court. They argue that there is no basis in the record for the appellate court's finding that probation would be "a more suitable sentence" or for its conclusion that a "vicious attack on a husband and his wife constitutes a mere 'teenage prank' deserving only of probation."

Defendant argues first that because he has served his sentence, a ruling by this court to either uphold or reverse the decision of the appellate court will have no effect on him. He states that after he had served approximately half of the three years to which he was sentenced, and after we had allowed the People's petition for leave to appeal, the Illinois State Prisoner Review Board placed him on parole. Citing *People v. Murrell* (1975), 60 Ill. 2d 287, and *People v. Smith* (1973), 16 Ill. App. 3d 100, he argues that he sought only to set aside his sentence and not his conviction, and because he has served his sentence, the issue is moot.

We do not agree that defendant's sentence has been completely served. Under the provisions of section 5—8—1(d) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(d)), defendant's sentence included a mandatory supervised release term of two years. In *People v. Correa* (1985), 108 Ill. 2d 541, the defendant filed a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1981, ch. 38, par. 122—1 *et seq.*) seeking to set aside guilty pleas which he contended were not voluntarily made. It was contended by the People that defendant could not seek relief under the Post-Conviction Hearing Act because he was not, at the time the petition was filed, imprisoned in the penitentiary. In response to that contention, the court said:

"In our case the defendant was serving a period of mandatory supervised release at the time the petition was filed. Such a term, by statutory provision, was a part of defendant's sentence. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(d).) The statute provided that the Department of Corrections shall 'retain custody' of all persons placed on mandatory supervised release and 'shall supervise' such persons during their release. (Ill. Rev. Stat. 1979, ch. 38, par. 1003—14—2(a).) Also, the released prisoner may be taken into custody for a violation of the conditions of his release. (Ill. Rev. Stat. 1979, ch. 38, par.

1003—14—2(c).) Thus at the time the defendant filed his petition for relief under the Act, he had not served his sentence and was still subject to being confined as a result of his conviction." (*People v. Correa* (1985), 108 Ill. 2d 541, 546.)

What we said in *Correa* applies equally to the situation here, and we hold that the issue is not moot.

We consider now the question whether the appellate court erred in holding that the sentence was improperly imposed and in ordering that defendant be resentenced. Concerning the standard for review of the propriety of a sentence, in *People v. La Pointe* (1981), 88 Ill. 2d 482, the court said:

"Reviewing courts have the power under our Rule 615(b)(4) (73 Ill. 2d R. 615(b)(4)) to reduce sentences. The determination and imposition of a sentence is a matter involving considerable judicial discretion, and our recent cases have repeatedly emphasized that the standard of review to be applied in determining whether a sentence is excessive is: Did the trial judge abuse his discretion in imposing that sentence? *People v. Robinson* (1980), 83 Ill. 2d 424; *People v. Kuesis* (1980), 83 Ill. 2d 402; *People v. Cox* (1980), 82 Ill. 2d 268; *People v. Lykins* (1979), 77 Ill. 2d 35, 40; *People v. Perruquet* (1977), 68 Ill. 2d 149.

\*\*\*

The Unified Code of Corrections vests a wide discretion in sentencing judges in order to permit reasoned judgments as to the penalty appropriate to the particular circumstances of each case. (*People v. Bolyard* (1975), 61 Ill. 2d 583.) We held in *Perruquet*, and emphasize here that 'the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight.' 68 Ill. 2d 149, 154." 88 Ill. 2d 482, 492-93.

The record shows that the circuit court reviewed the presentence report and heard argument of counsel concerning the sentence which should be imposed. The court

briefly reviewed the testimony and stated which of the factors in mitigation enumerated in section 5—5—3.1, and the factors in aggravation enumerated in section 5—5—3.2, of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—5—3.1, 1005—5—3.2) were shown to be present. Having concluded that a sentence of probation or conditional discharge would deprecate the seriousness of the offender's conduct, and would be inconsistent with the ends of justice (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—1), the court sentenced defendant to a term of three years, the minimum permissible term for a Class 2 felony.

We have reviewed the record in light of the rule enunciated in *La Pointe* and conclude that the appellate court erred, and that the circuit court, in imposing a sentence of three years, did not abuse discretion. The judgment of the appellate court is therefore reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*